Good morning, your honors. Richard Stone for Appellant Twentieth Century Fox International. In addition to answering any questions the panel might have, I have essentially three points to make to augment what is already in our briefs. The first point is, as mentioned in our briefs, that after the district court ruled the alter ego of Mr. Scriba, GFI answered the complaint and consented to jurisdiction in the Central District of California. The importance of that to this inquiry cannot be overstated. What follows from that? The first thing that follows under ADO Finance and the Flint case is that once the alter ego has consented to jurisdiction, our burden is simply to make a prima facie case of alter ego and then the inquiry collapses. There is no need, therefore, to examine the reasonableness factors that can be seen from the ADO Finance and Flint case. When they come forward with evidence, either by way of affidavit or otherwise, don't you have some obligation to come forward with more than just a bare assertion? Well, it is still the same burden, which is a prima facie burden. In other words, the standard is that all conflicts and facts are resolved in the plaintiff's court. Isn't there a difference between conflicts and facts when you have his specific affidavit talking about the alter ego? And just your nothing but just a general assertion with no evidence. Well, actually, I do believe we did have evidence, particularly given the standard, again, which is all reasonable inferences. You basically used his e-mails to hear his notes. Well, if I may explain, this was actually. . . Is that principally what you rely on? Well, no. Actually, we relied on the Higginson declaration as well as the admissions of Mr. Scriba himself. I'm sorry. Higginson was who? Higginson was an employee of Fox, the appellant, the plaintiff. For example. . . How would he have personal knowledge with regard to Gemini and or Scribna's contact with it? He did, in fact. And this is actually my second point, which is the fact that I think we could have brought into more stark relief in the briefs, and it's a very important fact. In his declaration at paragraph 11, which is ER 65, he discusses a meeting that he personally attended in October of 2005 with Mr. Scriba and Mr. Schlicht, who was then the managing director of GFI. The purpose of the meeting was to discuss the future relationship between GFI and Fox. And Mr. Higginson states that Mr. Scriba was the key decision-maker for GFI at that meeting, and that is an undisputed fact at this point. And why is that important? Well, when you take that fact, that there is undisputed evidence that Mr. Scriba is the key decision-maker for the alter ego, and then you look at what happened. Mr. Schlicht and Mr. Scriba agreed to make loans that depleted the ability of GFI to pay Fox. There is no evidence of any consideration back for those loans. That is undisputed. The only person who would benefit from this loan, because it's a loan from an entity in which Mr. Scriba is the majority controlling shareholder, to another one of his entities in which he is ultimately the controlling majority shareholder. And it is done without consideration and at a time... Why didn't you, I mean, it seems that you have obvious access to Schlicht. He's an employee. He is not. He was no longer an employee of Fox. He has left. Because when did he leave? He left. What happened is... Was he an employee during any of this litigation? He was an employee at the very start of the litigation and then left at that point. He would have had the most complete knowledge as to what Scriba's contact with the corporation was and who actually was running it. He may, but the fact that Mr. Schlicht's hands may not be entirely clean in this matter does not absolve Mr. Scriba, nor does it impact the jurisdictional analysis as to Mr. Scriba's involvement. Again, the key decision-maker, which is now undisputed in the record, who caused loans to be made from an entity that he owned and controlled to another entity he owned and controlled. Scriba says pretty clearly that Schlicht was the only one involved in making the decision to do this, and if at most all he did was approve somebody else's decision. Well, although we have the undisputed evidence that Mr. Scriba is the key decision-maker, he doesn't... You are correct. He disputes it. He blames... Well, he doesn't dispute that fact. He disputes that he knew there was insufficient funds for these loans, but he doesn't dispute there was no consideration coming back. He does point the finger at Mr. Schlicht. The decision was made by Schlicht. Now, he says all monies given as a loan to Amadeus Publishing, which is the other entity Mr. Scriba ultimately controls, were agreed upon between Mr. Schlicht and myself. That's the Higginson Declaration, Exhibit D, which is ER 75. So Mr. Scriba doesn't dispute that he was involved in the agreement to make these loans from one entity he controls to another. He then, in the same letter, says this left a financial hole that he cannot fill, thus conceding it rendered the company insolvent and unable to pay. Since time is running short, may I shift to another issue here? Please. The issue of discovery. Assume, and don't assume that we've decided, that we think the appropriate thing to do is to remand this case with instructions allowing you to conduct limited jurisdictional discovery. What should we say in those instructions to the district court? What sort of discovery do you think is reasonable for you to conduct before the district court reassesses jurisdiction? Obviously, there would be documents relating to the circumstances of the loans and what happened to the proceeds from the loans. Secondly, a deposition of Mr. Scriba, obviously, and thirdly, a deposition of Mr. Schlicht. All right. Thank you. But I would, and I'll be very brief, but I would argue that on this record, given the light burden that we have to make a prima facie case, and given that we are granted all reasonable inferences, and given the undisputed facts that are here, this is sort of a classic case of alter ego liability. In fact, this case would seem to fit hand in glove with the ADO finance case, which had virtually the same factual circumstances there. They, of course, submitted declarations saying, no, no, no, we did not bleed the company dry, but there was a prima facie case that loans were made from one company to another that depleted its liquid assets, and Judge Wardlaw held that because that was sufficient to make a prima facie case and because the alter ego company had answered and consented to jurisdiction, there was, therefore, jurisdiction over the alter ego individuals. It's essentially the facts we have here. Counsel, Judge Gould, if I may pose a question. Please. Just to get your perspective. I had the same questions in mind that Judge Nelson framed, and that is assuming that we're not persuaded that there is jurisdiction as a matter of law on this record. I understood you had asked for jurisdiction, I mean for discovery, and that was rejected. Is that right? That is correct. So if you're allowed to do discovery, is the discovery that you would seek that you would depose the two key witnesses and get the documents from the transactions where the money was sent to Amadeus? Correct, Your Honor. All right. Thank you, Counsel. And nothing else would be needed, correct? As best I can tell now, obviously, without having taken that discovery, I think that should be sufficient. Counsel, you have about a minute. Okay. Thank you. Thank you, Your Honor. Thank you. Counsel. Counsel. May it please the Court, Eric Early of the Glaser Weill Law Firm, on behalf of Photos. Counsel, if I could just cut to the chase from my perspective, then I'll keep my mouth shut. But I found the record kind of sketchy, and I don't really see a good reason why we shouldn't permit limited discovery on jurisdiction. So I would ask you to address that. Your Honor, well, first of all, we looked at the limited discovery issue because I'm not surprised that that would be one of the issues that Your Honors would focus on today. But looking at Judge Wu's ruling below, he looked at that issue, and he commented on the evidence that was already before him. He commented either in the ruling or at the oral argument about the extent of the alter ego evidence that was before him. In fact, Dr. Scriba, our side, presented substantial evidence that showed that there was this is not an alter ego situation, that he's not an alter ego of the entity, GFI. And tellingly, the evidence that was offered by the other side on alter ego, as attached to the Higginson Declaration that the opposing counsel was referring to, supported Dr. Scriba's position. There was letter after letter how they had to go through the corporate formalities to remove this fellow, Mr. Schlicht, from the managing directorship of the entity. How they had to call a shareholders meeting. How Dr. Scriba didn't just call him up and say, you're fired. How they had to wait at the time period to do it. And so the judge below looked at all of this and determined we don't need any further evidence of alter ego. I see it. It's here from what both sides submitted. So we don't need additional discovery on that. And the judge below also looked at, so my point is, Your Honor, additional discovery is not needed. Both sides had sufficient time in the briefing and sufficient ability in the briefing to submit the evidence they needed to show this alter ego. And as I just said, the evidence submitted by the other side actually supported us on that issue. And then furthermore, Your Honor, as to the jurisdictional discovery issue, if I may, as to the reasonableness factor, Judge Wu also addressed that in saying that with respect to additional jurisdictional discovery, Fox is in possession of all of the evidence it needs without additional discovery to show whether or not jurisdiction over Dr. Scriba in the United States would be reasonable. You don't need additional discovery, no matter how limited, to get that. And the judge below added, by the way, this additional jurisdictional discovery requires people to travel to Europe. And it is burdensome on my client, especially given the unreasonableness analysis that was done by the court below. So that's my answer to that question, Your Honor. Thank you. Thank you. I appreciate it. Thank you. So those are my general positions on alter ego, as I just stated. They didn't come close to it. Additional discovery is not needed because we've seen the evidence on it. And it is quite substantial on the record as it exists. And then I would address the reasonableness factors as well, if you'd like, which is what the judge ruled on. But I think they were quite persuasive in the ruling and well articulated. I'd like to ask a question about Gemini. At the time the district court dismissed Fox's claims against Mr. Scriba, Gemini had not yet made an appearance in this lawsuit. How, if at all, does Gemini's subsequent appearance in the case affect your review of personal jurisdiction? Your Honor, if I may, we addressed that at pages 19 and 20 of our opposition brief. We say that the subsequent appearance of Gemini does not affect the jurisdictional analysis. First of all, the allegations about who may have paid for the defense of Gemini that are being made by the other side without substantiation, even if Dr. Scriba was paying for those fees, don't affect the alter ego analysis. And we cited to the Amico chemical case on page 19 of our brief, which says that the payment in part, the payment of legal fees, does not establish alter ego jurisdiction. It affects the reasonableness. Yes, yes, Your Honor. If he's already, or one of his, there's litigation going to be conducted and he's going to have some part of it through ownership in Gemini, doesn't it, under the reasonableness analysis, make it more appropriate that it could potentially be held here? Your Honor, I would submit that on the reasonableness analysis, it lessens the load or the burden. However, from a personal jurisdiction analysis, the cases are replete with positions that, whereas personal jurisdiction might be appropriate in this case for GFI, you can have jurisdiction in different venues for different parties. And whereas it might lessen the load somewhat from a reasonableness standpoint, there are several factors that do not get lightened by GFI being here and Dr. Scriba continuing to be sued by Fox in Germany where they're presently suing him. Oh, Gemini and Mr. Scriba have the same lawyers? That's correct, Your Honor, yes. And doesn't that reduce the burden? Oh. Well, I'm looking at you and saying, doesn't that reduce your burden? Well, it reduces my personal burden. Yes. It reduces my personal burden, Your Honor. However, the case that Dr. Scriba has to defend and the case that Gemini have to defend are in many ways different cases. Dr. Scriba is really before the court on an alter ego analysis in large respect. And all of the documents and all of the information as to how he runs that company and how that company is run and the witnesses and the 40, former 40 employees that used to work for that company, et cetera, et cetera, et cetera, are either in Germany or Russia because Gemini is a Russian corporation. So the case against GFI is not exactly the case against Dr. Scriba and in many respects are vastly different. And I will also add again that Fox is suing Dr. Scriba right now in Germany. And as you saw by the record, we attached their complaint. What are you doing here? I wish I was in Germany right now. No, I don't. I'm glad I'm here, Your Honor. Counsel, I have a question for you about that since you wish you were in Germany right now. Act like that. I know that's a light comment, but here's the question. If we were to permit some limited discovery, would Fox be able to take Dr. Scriba's deposition in Germany by stipulation of the parties or would it be necessary to get a letters rogatory or some kind of approval from a German court? Your Honor, I can't answer that question now. I know that Fox had to go through the process, the Hague Convention process, to serve Dr. Scriba in the first place. As far as the involvement of an American party going to Europe and taking a deposition of a party there, I just am not sufficiently knowledgeable of those details. And without speaking to my client directly about it, I don't know if it could be stipulated to or would be. Okay. Thank you. All right. You have a minute, 22 seconds left. Your Honor, unless the Court has any further questions, I think our position is quite clear. No questions. Thank you, Counsel. Thank you very much. Thank you. Thank you again, Your Honor. So very briefly, there would be no burden from additional discovery. I mean, if you step back and look at it, GFI has now answered in its current manner. It's a different discovery, though, isn't it? It should be actually identical. It's the core issue. With Scriba, though, you've got to do the alter ego discovery. Which is a very minimal added piece. The core issue becomes what happened to the money, what were the loans made for, was there any consideration? Because you haven't talked about it. You'd have to do all kinds of discovery on whether he abided by the corporate formalities. Well. The corporation itself kind of acted as almost a sole proprietorship or a partnership. Not necessarily. And this gets into whether Russian law or California law applies under Russian law. It's more liberal. But also there's a fraudulent conveyance claim here as well. And if Mr. Scriba directed a fraudulent conveyance which gave loans for no consideration, which caused GFI to be unable to pay its obligations, there would be direct liability for that as well, in addition to alter ego, and that's another issue we would have to explore. If you had the opportunity, counsel, if you had the opportunity to take Mr. Scriba's, Dr. Scriba's deposition, where would you be trying to take it? Would you be trying to take it in Germany to avoid his travel expense? Or would you be trying to compel him to come to the U.S. for this deposition? We would probably be obligated to take it in Germany unless it is also the case that he would be the 30B6 witness for GFI, who is currently consented to jurisdiction. And if that is the case, we would ask that rather than play some kind of a game here, that we take the deposition in the central district if he is going to be the 30B6 of GFI. And our belief is he is the only one who could legitimately serve as a 30B6. And his other entity, a recipient of these loans, is now the managing director of GFI. That's Amadeus Distribution Service. So, you know, the circle is now complete. So that would be the one exception, I would think. Thank you, counsel, your time has expired. Thank you, Your Honor. Thank you for your arguments. The case is submitted. The Court will now take a 10-minute recess.
judges: Gwin, Nelson D. W., Gould